

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2006

# In Re: A&P Diversifi v. Fleet Bank

Precedential or Non-Precedential: Precedential

Docket No. 04-3622

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: A&P Diversifi v. Fleet Bank" (2006). *2006 Decisions.* Paper 1668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3622

———

IN RE: A&P DIVERSIFIED TECHNOLOGIES
REALTY, INC.

CATHERINE E. YOUNGMAN, Trustee,

Appellant

v.

FLEET BANK, N.A.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 04-01711)
Honorable Garrett E. Brown, Jr., District Judge

———

Argued October 26, 2005

BEFORE:  SLOVITER, FISHER,
and GREENBERG, Circuit Judges

(Filed: January 19, 2006)

———

Joseph M. Cerra (argued)
Forman, Holt & Eliades
218 Route 17 North
Rochelle Park, NJ 07662

    Attorneys for Appellant

Tod S. Chasin

Mark S. Lichtenstein (argued)

Buchanan Ingersoll
700 Alexander Park
Suite 300
Princeton, NJ 08540

Attorneys for Appellee

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before this court on appeal by a bankruptcy trustee from a final order of the district court entered August 31, 2004, affirming two orders of the bankruptcy court. Following a state foreclosure action and the satisfaction of the foreclosure judgment, the bankruptcy court granted the mortgagee-bank's motion under 11 U.S.C. § 506(b) ("section 506(b)") to award it attorneys' fees and expenses for services its attorneys rendered in the state and bankruptcy courts relating to the foreclosure.  The trustee argues that the mortgagee-bank is not entitled to fees under section 506(b) because the note and mortgage, which included a provision for attorneys' fees and expenses, were extinguished by their merger into the final judgment of foreclosure.  The trustee further argues that a potential exception to the merger doctrine predicated on the parties' intent to preserve the mortgagee's right to seek its attorneys' fees after entry and satisfaction of the foreclosure judgment does not apply because the terms of the mortgage did not evidence that the parties had any such intent.  We agree with the trustee and will reverse the order of the district court.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or around February 13, 1995, the debtor, A&P Diversified Technologies Realty, Inc., executed a promissory note in favor of

2

Fleet Bank, N.A. ("Fleet")[1] in the amount of $900,000,[2] secured by a mortgage on the debtor's property. The mortgage provided, in relevant part:

> **Agreement to Pay Attorneys' Fees and Expenses.** In the event that the Mortgagor should default under any of the provisions of the Note or any other Loan Document and the Mortgagee shall employ attorneys or incur other costs and expenses for the collection of payments due or to become due, the realization upon any Collateral, or for the enforcement or performance or observance of any Obligation or agreement on the part of the Mortgagor of any Guarantor under any Loan Document, whether by litigation or otherwise, <u>the Mortgagor agrees that it will pay to the Mortgagee, on demand, the reasonable fee of such attorneys, together with all other costs and expenses incurred by the Mortgagee</u>, and that all of said costs and expenses shall be secured by the Mortgage.

J.A. at 232-33[3] (emphasis added). The mortgage also provided that "[t]he Mortgagor . . . waives and releases, to the fullest extent it may lawfully do so, all benefit of any present or future moratorium law or any other present or future law, regulation or judicial decisions . . . [which] conflict[ ] with any provision herein or in the other Loan Documents." J.A. at 230.

The debtor defaulted, leading Fleet to institute a foreclosure action in the Superior Court of New Jersey. While the foreclosure proceedings were pending, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the bankruptcy court, which automatically stayed the foreclosure, but the bankruptcy court granted Fleet relief from the stay and allowed it to continue with the foreclosure. Ultimately, the bankruptcy court converted the debtor's case to a Chapter 7 proceeding and appointed Catherine E. Youngman as the Chapter 7 trustee for the debtor's estate on May 2, 2001. After the stay was lifted, Fleet obtained a final judgment of

---

[1]National Westminster Bank was the original mortgagee, but on or about May 1, 1996, it merged with Fleet.

[2]On November 30, 1995, the parties reduced the amount of the mortgage to $500,000.

[3]"J.A." refers to the Joint Appendix prepared by counsel.

3

foreclosure in the amount of $1,118,853.69 which included $7500 in counsel fees awarded to Fleet in accordance with N.J. Court Rule 4:42-9(a)(4) ("Rule 4:42-9(a)(4)") as well as substantial taxes and interest not in dispute here.[4]  Fleet collected the full amount of the judgment through the state-court foreclosure process.

The trustee subsequently filed a motion in the bankruptcy court to expunge Fleet's claim.  Fleet opposed the motion and cross-moved for attorneys' fees pursuant to section 506(b).  The bankruptcy court denied the trustee's motion and granted Fleet's motion, awarding attorneys' fees in the amount of $304,181.45 and expenses in the amount of $32,772.43.  It appears that the court contemplated that the trustee would pay the fees and expenses from the debtor's estate but that this will not be possible as the debtor's estate is valued at far less than the fees and expenses awarded.  Nevertheless, the

---

[4]Rule 4:42-9(a)(4) provides, with respect to attorney's fees, that in an action for the foreclosure of a mortgage,

> the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3½%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500.  If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services.  In no case shall the fee allowance exceed the limitations of this rule.

Fleet may not have been limited to a $7500 fee in the state court because Rule 4:42-9(a)(4) provides that if the fee calculated under the rule without regard for the $7500 limitation results in a sum in excess of that amount "the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services." Nevertheless as far as we are aware Fleet did not seek an additional fee in the state court on the basis of this rule and in its brief it does not claim to have done so.  We acknowledge, however, that any additional fees over the $7500 awarded that it might have obtained under Rule 4:42-9(a)(4) would have been minuscule compared to the fees the bankruptcy court awarded.

4

trustee appealed to the district court from the bankruptcy court's orders.

The district court affirmed the bankruptcy court's orders awarding attorneys' fees and expenses to Fleet and denying the trustee's motion to expunge Fleet's claim. Although the district court acknowledged that the merger doctrine, which normally extinguishes a creditor's rights under a mortgage once judgment is entered, applied in this case, it held that "it is clear from the language of the agreement that the parties intended their rights under the mortgage to be preserved beyond any judgment, more specifically, the state court foreclosure judgment." J.A. at 10. Thus, in the district court's view, Fleet's right to recover fees and expenses was not extinguished by merger of the mortgage into the judgment. In reaching its result the court relied on language we already have quoted contained in the mortgage, which provided that "[t]he Mortgagor . . . waives and releases, to the fullest extent it may lawfully do so, all benefit of any present or future moratorium law or any other present or future law, regulation of judicial decisions[.]" J.A. at 10. The district court also found that the amount of attorneys' fees awarded by the bankruptcy court was reasonable and that the bankruptcy court did not abuse its discretion in awarding them.

## III. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 158(a) as the bankruptcy court orders were final and appealable. See In re Walsh Trucking Co., 838 F.2d 698, 701 (3d Cir. 1988) ("We believe that the considerations that led this court to adopt the more flexible standards of finality in reviewing bankruptcy proceedings are equally applicable in the context of appeals of orders of the bankruptcy court to the district court."). Our determination in this regard comports with those of other courts of appeals in similar circumstances. See, e.g., In re Smith, 317 F.3d 918, 923 (9th Cir. 2002) (court of appeals has jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291 on an appeal from a district order affirming a bankruptcy court's award of attorneys' fees); In re Wade, 991 F.2d 402, 406 (7th Cir. 1993) ("Several types of bankruptcy orders are final and appealable, for example, orders allowing or denying claims[.]"); In re Baudoin, 981 F.2d 736, 742 (5th Cir. 1993) (holding "that an order allowing a proof of claim is, likewise, a final judgment").

5

We have jurisdiction under 28 U.S.C. § 158(d), and 28 U.S.C. § 1291. Inasmuch as the district court sits as an appellate court in bankruptcy cases, our review of the district court's order is plenary. In re Visual Indus., Inc., 57 F.3d 321, 324 (3d Cir. 1995).

## IV. DISCUSSION

In general, New Jersey courts are said to follow the "American rule," under which parties bear their own litigation costs, including attorneys' fees. See McKeown-Brand v. Trump Castle Hotel & Casino, 626 A.2d 425, 429 (N.J. 1993). Rule 4:42-9(a)(4) provides, however, that, in actions for the foreclosure of a mortgage, the prevailing plaintiff is entitled to attorneys' fees. Although Rule 4:42-9(a)(4) limits the amount of recoverable attorneys' fees through a multi-step percentage formula, the Bankruptcy Code will, if applicable, preempt this rule, see In re Kord Enters. II, 139 F.3d 684, 689 (9th Cir. 1998), as it provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

Notwithstanding section 506(b), the trustee asserts that "Fleet possessed no entitlement to counsel fees under section 506(b) because the note and mortgage on which it relied for its section 506(b) claim had been extinguished by merger into the final judgment of foreclosure." Appellant's Br. at 16. In response and in urging us to affirm the award of attorneys' fees and expenses, Fleet argues that the loan documents "clearly evidence[ ] the parties' intent for the exception to the merger doctrine to apply." Appellee's Br. at 19. Like the district court, Fleet emphasizes the fact that the debtor waived and released the benefit of all laws, regulations, and judicial decisions.

We agree with the trustee for the following reasons. Under the

6

merger doctrine, a contract is deemed to merge with the judgment, thereby depriving a plaintiff from being able to assert claims based on the terms and provisions of the contractual instrument. In re Roach, 824 F.2d 1370, 1377 (3d Cir. 1987) ("In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished.")[5]; see also In re Olick, 221 B.R. 146, 152 (Bankr. E.D. Pa. 1998).

In In re Stendardo we recognized an exception to the merger doctrine and held that obligations under a mortgage are merged into a foreclosure judgment unless "the mortgage clearly evidences [an] intent to preserve the effectiveness of that provision post-judgment." 991 F.2d 1089, 1094 (3d Cir. 1993). Nevertheless, in that case we held that the exception to the merger doctrine did not apply with respect to post-judgment taxes and insurance premiums because the mortgage required the debtor to pay these expenses only while the mortgage was in effect as we did not find any language "in the [m]ortgage at issue [in that case] that indicate[s] the parties' intent to preserve the Debtors' obligation to pay the relevant taxes and premiums beyond the date of the Judgment." Id. at 1095. Accordingly, we concluded that the creditor was not entitled to reimbursement for payment of the expenses because the debtors' obligation under the mortgage to pay property taxes and insurance

---

[5] In Roach, we held that a debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the actual foreclosure sale. 824 F.2d at 1378. However, Congress subsequently enacted 11 U.S.C. § 1322(c)(1), which provides, in relevant part:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law–
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

Congress considered Roach to be "in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy." H.R. Rep. No. 103-835, at 52 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361. The enactment of section 322(c)(1) does not alter our holding in this case as we cite Roach only to explain the merger doctrine and its general applicability in New Jersey.

premiums ended when the mortgage merged into the judgment. Id. at 1095-96; see also In re Schwartz, 77 B.R. 177, 180 (Bankr. S.D. Ohio 1987) ("Once the [state] court entered its final judgment, any right which [the creditor] may have had to attorneys' fees under the note was extinguished."); In re Schlecht, 36 B.R. 236, 241 (Bankr. D. Alaska 1983) ("[T]he bank's note containing the provision for attorney's fees has merged with its Alaska Superior Court judgment. There is no longer an agreement pursuant to which attorney's fees can be awarded under § 506(b)."); cf. In re Olick, 221 B.R. at 151 (allowing creditor to recover attorneys' fees post-judgment when foreclosure judgment was a confessed judgment, which did not constitute a final judgment).

Although we decided Stendardo applying Pennsylvania law, we predict that the Supreme Court of New Jersey would find the exception to the merger doctrine, as we explained it in Stendardo, similarly applicable in New Jersey. See In re Winogora, 209 B.R. 632, 636 n.1 (Bankr. D.N.J. 1997) ("Although Stendardo was based on Pennsylvania law, it cited Roach for the proposition that under the law of both states [Pennsylvania and New Jersey] a mortgage merges into a foreclosure judgment. Because the merger doctrine was the basis for Stendardo's holding that mortgage provisions for taxes and insurance no longer exist after judgment, Stendardo is binding in chapter 13 cases involving New Jersey real property as well.") (citation omitted).[6]

In this case we find that the lending agreements including the mortgage merged into the final judgment of foreclosure, which ordinarily precludes the recovery of attorneys' fees. Under the merger doctrine, the mortgage and its concomitant attorneys' fees provision ceased to exist when the judgment was entered. Therefore, when Fleet moved for attorneys' fees pursuant to section 506(b)

_____

[6]We note that in In re Loehwing, 320 B.R. 281, 290 (Bankr. D.N.J. 2005), the bankruptcy court rejected the trustee's reliance on Stendardo for the proposition that post-merger payments of sheriff's foreclosure fees were improper, reasoning, in part, that "Stendardo dealt with Pennsylvania law." Id. The court, however, did not predict expressly that New Jersey courts would not adhere to Stendardo. Id. Moreover, the court primarily based its holding not on the inapplicability of Stendardo, but its findings that "[s]ection 506(b) is irrelevant to the legal analysis of this case, and the Sheriff's fees are included in the amount necessary to satisfy the foreclosure judgment." Id.

before the bankruptcy court, it was no longer the beneficiary of an agreement under which a claim for attorneys' fees arose, which supplies the foundation for a section 506(b) award.

Nevertheless, applying the methodology we set forth in Stenardo, we must examine the mortgage to determine whether Fleet is entitled to attorneys' fees and expenses under the exception to the merger doctrine. See Stendardo, 991 F.2d at 1094. Like the loan documents in Stendardo, the mortgage here does not clearly evidence an intent to preserve the effectiveness of the attorneys' fees and expenses provision following the entry of the foreclosure judgment. See id. The fact that the debtor generally waived certain present or future laws for its benefit does not clearly indicate that the debtor's obligation to pay attorneys' fees continued post-judgment.[7] Indeed, the waiver does not address this point at all. Thus, we are satisfied that the broad waiver language in the mortgage does not suffice to avoid the merger doctrine, and the exception to the merger doctrine therefore does not apply.[8]

We also disagree with Fleet's assertion that New Jersey's limitation on attorneys' fees in Rule 4:42-9(a)(4) somehow renders the merger doctrine inapplicable and allows creditors to recover attorneys' fees post-judgment. In this regard Fleet contends that cases from other jurisdictions which hold "that a secured party cannot receive a section 506(b) award after its mortgage is satisfied are inappropriate and emanate from jurisdictions outside New Jersey where unlike New Jersey, a party may seek all of its legal fees and costs in the context of a state court foreclosure action." Appellee's

---

[7]The trustee argues that even if there was express language in the lending agreements that authorized an award of attorneys' fees post-judgment, "this recognized exception to the merger doctrine only authorizes the continued collection of counsel fees between the time the final judgment of foreclosure is entered and the time the judgment is satisfied." Appellant's Br. at 13. We need not address whether the exception to the merger doctrine applies after a judgment has been satisfied in full because we are determining that the exception is inapplicable.

[8]The trustee alternatively argues that the amount of attorneys' fees and expenses awarded to Fleet was manifestly unreasonable. We need not reach this issue inasmuch as we find that Fleet is not entitled to any attorneys' fees or expenses under section 506(b).

Br. at 19. Rule 4:42-9(a)(4) does not render the merger doctrine inapplicable; nor does it allow a mortgage agreement to survive a judgment of foreclosure. Indeed, it does not even address these matters. Rather, it limits the award of attorneys' fees allowable under state law as it provides, after setting forth the allowable fees, that "[i]n no case shall the fee allowance exceed the limitations of this rule." The Supreme Court of New Jersey has made it clear that the parties to a mortgage cannot by contract override the limitations of the rule. Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 210 A.2d 68, 71 (N.J. 1965).

In reaching our result we emphasize the following. While it is true that the debtor agreed to pay Fleet's "reasonable" attorneys' fees in a foreclosure action and arguably waived the benefit of certain laws limiting the amount of fees Fleet could recover, certainly in the absence of a bankruptcy proceeding these provisions would not have rendered the limitations of Rule 4:42-9(a)(4) ineffective. Id. Furthermore, we point out that inasmuch as mortgagees ordinarily prepare the mortgage documents, if such provisions superceded Rule 4:42-9(a)(4) in foreclosure actions, the rule soon would become meaningless.

The question, then, is whether section 506(b) should require a different result in a bankruptcy context. We do not see why it should in the absence of clear language in the loan documents preserving the claim for attorneys' fees after a foreclosure judgment. In this regard we observe that the debtor's waiver in the mortgage of the "benefit" of certain laws hardly can assist Fleet with respect to section 506(b) as that section in allowing a creditor to obtain attorneys' fees in excess of those it otherwise could recover surely is not a law enacted for the benefit of a mortgagor. Thus, Fleet, is limited to recovering its "reasonable" attorneys' fees, which were determined through the application of the state court rule in the state court proceedings, as the mortgage or other documents simply do not provide that the provision for reasonable fees in the mortgage renders inapplicable the ordinary application of the merger doctrine.

## V. CONCLUSION

For the foregoing reasons, we will reverse the order of the district court entered August 31, 2004, and will remand the case to the

10

district court to enter an order reversing the orders of the bankruptcy court to the end that Fleet's claim for fees and expenses under section 506(b) will be expunged and denied.

———————